1:19MJ4125-JDG

I, James Cudo #1705 Detective with the Cleveland, Ohio Police Department, currently assigned to the Northern Ohio Law Enforcement Task Force (hereinafter referred to as NOLETF) as a Task Force Officer (hereinafter referred to as TFO) with the Federal Bureau of Investigation (hereinafter referred to as FBI), hereinafter referred to as Affiant, being duly sworn, do depose and state as follows:

## BACKGROUND AND TRAINING OF THE AFFIANT

1.      As a Task Force Officer, of the FBI, your Affiant is an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

2.      Your Affiant has been employed by the Cleveland Police Department (CPD) since June 1, 1993, and has been assigned to the Narcotics Unit and been a detective investigating narcotics related crimes for 21 years, since October of 2008 has been as a TFO. As a narcotics officer, your Affiant has participated in street level narcotics enforcement, and the dismantlement of mid to upper level drug trafficking organizations. Your Affiant has participated in numerous undercover operations involving various drug trafficking targets. Your Affiant is currently assigned to the NOLETF a Cleveland based, multi-agency, federal, state, and local law enforcement drug task force. Your Affiant has participated in investigations targeting organizations involved in drug trafficking offenses in the Northern District of Ohio and elsewhere. Prior to this assignment, your Affiant was assigned to investigate drug-related offenses as well as other general criminal offenses in the State of Ohio as well as the Northern District of Ohio. These crimes were prosecuted in both state and federal court.  Your Affiant is also a certified peace officer in the State of Ohio.

3.      As a Detective in the Cleveland, Ohio, Police Department, your Affiant received basic drug training at the Cleveland Police Academy located in Cleveland, Ohio. Your Affiant received six months of field training by officers of the Cleveland Police Department's Third District. During this time, your Affiant participated in routine police functions, including but not limited to investigating drug related offenses. Your Affiant was assigned to the Cleveland Police Department's Narcotic Unit in August 2005. Your Affiant received basic narcotic investigation training by training officers assigned to the Narcotic Unit in which basic and advanced drug-related investigation techniques were conducted, including, but not limited to: surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation. Your Affiant receives annual training at the Cleveland, Ohio, Police Academy regarding law enforcement matters, including matters relating to drug trafficking. Your Affiant has participated in all of the usual methods of investigation including, but not limited to: visual surveillance, questioning witnesses, and analyzing evidence. Your Affiant has been involved in hundreds of drug-related arrests and has coordinated undercover purchases of controlled substances. Your Affiant has planned and executed search warrants resulting in the seizure of drugs, their proceeds, weapons, and drug preparation tools. Your Affiant has participated as an undercover officer during investigations, and has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations. Your Affiant has previously participated in numerous Title III wiretaps and investigations.

4.      This affidavit is submitted in support of a criminal complaint and arrest warrant for KHALILAH CRUMPLER, a black female, date of birth 11/3/1975, social security number XXX-XX-3390, height 5'07", weight 152 pounds, brown hair, brown eyes, residing at 13361 Highstone Manor Court, Rancho Cucamonga, California.  Affiant submits that based on the facts stated herein, that there is probable cause to believe that Khalilah Crumpler has conspired to launder money, in violation of Title 21, United States Code, Section 1956(h).

5.      The assertions made herein are based upon my review of records and interviews of individuals, and are true and correct to the best of my knowledge.  In that this Affidavit is being submitted for the limited purpose of supporting a criminal complaint and obtaining an arrest warrant, your Affiant submits that this Affidavit contains sufficient facts necessary to demonstrate probable cause to believe that the crimes outlined below have been committed by CRUMPLER, but does not include every fact known to this investigation.

## APPLICABLE LAW

6.      Title 18, United States Code, Section 1956(a)(1)(A)(i), makes it a federal crime to knowingly conduct and attempt to conduct a financial transaction knowing that the property in a financial transaction represents the proceeds of some form of unlawful activity which in fact involves the proceeds of specified unlawful activity acting with the intent to promote the carrying on of specified unlawful activity.

7.      Title 18, United States Code, Section 1956(a)(1)(B)(i), makes it a federal crime to knowingly conduct and attempt to conduct a financial transaction knowing that the property in a financial transaction represents the proceeds of some form of unlawful activity which in fact involves the proceeds of specified unlawful activity acting with the

knowledge the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

8.      Title 18, United States Code, Section 1956(a)(1)(B)(ii), makes it a federal crime to knowingly conduct and attempt to conduct a financial transaction knowing that the property in a financial transaction represents the proceeds of some form of unlawful activity which in fact involves the proceeds of specified unlawful activity acting with the knowledge the transaction is designed in whole or in part to avoid a transaction reporting requirement under state or federal law.

## BASIS FOR KNOWLEDGE

9.      Your Affiant has been directly and indirectly involved in the investigation of the Target Offenses and is familiar with all the facts and circumstances of this investigation as a result of personal participation and by reviewing reports furnished by other investigators from NOLETF or other law enforcement officers participating in this investigation.  This Affidavit is based, in part, on personal knowledge derived from your Affiant's participation in this investigation and upon information gained through the use of the following investigative techniques:

  a.  Consensually authorized monitoring of meetings and telephone conversations.

  b.  Oral and written reports about this and other investigations which your Affiant has received, directly or indirectly, from officers of the Northern Ohio Law Enforcement Task Force (hereinafter "NOLETF" a Cleveland, Ohio, multi-agency Federal, state, and local drug task force), including the IRS, CBP, and the FBI.

    c.  Physical surveillance conducted by investigators from NOLETF Officers, which has been reported to your Affiant either directly or indirectly.

    d.  A review of telephone toll records and pen register information, obtained pursuant to subpoena and court order.

    e.  Independent investigations conducted by the DEA, Cuyahoga County Sheriff's Office (CCS) and NOLETF members.

    f.  Debriefings of confidential informants and other witnesses.

    g.  Controlled drug purchases.

    h.  Court authorized interception of wire and electronic communications.

    i.  Search warrants for text message communications.

    j.  Mobile tracking devices.

    k.  Static electronic surveillance.

    l.  Wall-off traffic stops.

    m.  Search warrants for premises of known and suspected of DTO members.

    n.  Consent search for premises of known and suspected DTO members.

10.    For some of the telephone calls summarized below, your Affiant has included his understanding of what was said during the call, based on the content and context of the conversations, Affiant's experience as a law enforcement officer and the experience of other law enforcement officers in this investigation, including our experience listening to intercepted conversations from other Title III interception and

consensual recordings as a whole. Additionally, the times listed for the calls are approximate, and all of the voice identifications for the conversations set out below are preliminary. In most cases, voice identifications are based on names used during the intercepted conversations, voice recognition that has been accomplished to date by law enforcement officers, historical information developed during this investigation, computerized open source database checks, credit header database checks, and/or telephone subscriber information. Finally, the summaries below do not include all potentially criminal recorded conversations, or all statements or topics covered during the course of this investigation.

11. Probable cause exists to believe that KHALILAH CRUMPLER, aka BALDY has committed offenses involving Title 18, United States Code, Section 1956(h): conspiracy to launder money (hereinafter "Target Offenses").

## RELIABILITY OF INFORMATION

12. Your Affiant and other investigators have received information from seven confidential sources ("CSes") hereinafter referred to as CS#1 through CS#7, for this affidavit.

13. CS#1 has been providing information to members of law enforcement since August, 2003. CS#1 is currently receiving monetary compensation for providing information regarding illegal activity. CS#1 has no felony criminal convictions. CS#1 has provided information to law enforcement concerning activities of multiple drug trafficking organizations in the Cleveland, Ohio, area. On numerous occasions, CS#1's information has led to the convictions of drug traffickers and their key associates. Since 2003, CS#1 has routinely provided information which led to the identification and conviction of violent criminals. CS#1 has also assisted local law enforcement with the

identification and conviction of persons involved in three homicides.  For these reasons, your Affiant believes that CS#1's information is reliable.

14.  CS#2 began providing information to members of NOLETF in August 27, 2015.  CS#2 has provided information to investigators from NOLETF on two separate occasions.  CS#2 was cooperating with law enforcement for consideration regarding pending federal criminal charges.  The information provided by CS#2 has been corroborated by computer checks, other Confidential Sources, Title III wiretap calls, and subpoenaed records.  For these reasons, your Affiant believes that CS#2's information is reliable.  CS#2's criminal convictions include:  Drug Abuse (fourth degree felony) (1992), Drug Abuse (third degree felony) (1995), Attempted Trafficking Cocaine (fifth degree felony) (1997), Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine (2004), Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine (2017).

15.  CS#3 began providing information to members of the Drug Enforcement Administration (DEA) in 2016.  CS#3 received consideration for criminal charges in return for information regarding drug trafficking.  CS#3's information was corroborated by other Confidential Sources, as well as the 2014 and 2015 wiretap investigation, as described in paragraph 21 herein.  Thus, your Affiant believes that CS#3's information is reliable.  CS#3's criminal convictions include: Drug Abuse (fourth degree felony) (1992), Drug Trafficking (third degree felony) (1993), Drug Abuse (third degree felony) (1993), Theft (fourth degree felony) (1998), Non Support of Dependents (fifth degree felony) (2008), Attempted Tampering with Evidence (fifth degree felony) and Trafficking (third degree felony) (2015), Conspiracy to Distribute Fentanyl and Felon in Possession of a Firearm (2016).

16.     CS#4 began providing information to the FBI in 2003.  CS#4 provided information and cooperative assistance in a large-scale drug investigation which led directly to a Title III interception of a Cleveland, Ohio, drug trafficker.  As part of that investigation, over 20 defendants were charged and convicted of drug conspiracy in 2004.  However, during the course of the investigation, although all of CS#4's information proved to accurate, agents learned that CS#4 was participating in some of the conspiratorial activity being investigated, and CS#4 eventually pled guilty to be being a criminal participant in that conspiracy.   At that time, CS#4 was "closed" as an active informant.  Between 2007 and 2012, CS#4 provided productive information concerning criminal activities in the Cleveland, Ohio and elsewhere, but was not employed as an active confidential source.  In 2013, CS#4 was reactivated as a confidential source, and provided information and cooperative assistance which allowed agents and officers to develop new confidential sources of information which are still being utilized.  In 2014, CS#4 was a witness to a violent crime, and CS#4's status as a confidential source was deactivated temporarily until the matter was resolved.  Ultimately, CS#4's testimony in a jury trial was proven to be accurate, and critical in the conviction of a violent criminal.  Since that time, CS#4 has returned to providing productive information which has led to the identification of multiple defendants in numerous additional Cleveland, Ohio, area violent crimes.  CS#4's information has also been crucial in exposing the operating procedures of multiple upper-level drug trafficking groups.  For these reasons, CS#4 is considered a reliable source of information.  CS#4 is currently receiving monetary compensation for providing information regarding illegal activity.  CS#4 has convictions for:  Trafficking in Drugs (1989), Federal Drug Charges (1993), and Possession with Intent to Distribute Crack Cocaine, Cocaine and Heroin (2006).

17.     CS#5 has been providing information to the FBI since approximately 2004. CS#5 is currently providing information to the FBI for monetary compensation.  CS#5 has provided information relative to other DTOs.   CS#5's information has been corroborated by other Confidential Sources, Title III wiretaps, computerized checks, and controlled purchases of narcotics throughout each of the investigations in which CS#5 has provided the information.  CS#5 has provided information to the FBI which led to the recovery of a child kidnapping victim.  For these reasons, your Affiant believes that CS#5's information is reliable.  CS#5 has a federal conviction for Conspiracy to Possess with Intent to Distribute and Distribute Cocaine and Cocaine Base (2003).

18.     CS#6 has provided information to members of the Drug Enforcement Administration (DEA) since 2005 and your Affiant since September 2018.  CS#6 has cooperated with law enforcement in the past for reduction of pending charges.  CS#6 is currently receiving monetary compensation for providing information regarding illegal activity.  CS#6 is also receiving consideration for a pending sentence.  CS#6's information has been corroborated by post arrest interviews, other confidential source information, intercepted wire calls, past and current investigations, and surveillance.  For these reasons, your Affiant believes that CS#6's information is reliable.  CS#6's criminal convictions include:  Conspiracy to Distribute Cocaine (1999), Conspiracy to Distribute Cocaine (2008).

19.     CS#7 has been providing information to members of NOLETF since April 2019.  CS#7's information has been corroborated by court-authorized Title III wiretap

intercepts, numerous other confidential sources, GPS tracking of vehicles and telephones, and physical and electronic surveillance.  Thus, CS#7 is considered a reliable source of information for this application. CS#7 is providing information to law enforcement for consideration regarding pending charges.   CS#7 has prior felony convictions for Possession of Drugs (fifth degree felony) (1998); Drug Trafficking (second degree felony) (1994); and Attempted Trafficking Drugs (second degree felony) (1993).

## FACTS ESTABLISHING PROBABLE CAUSE:

## INVESTIGATION OF THE KHALILAH CRUMPLER DRUG

## TRAFFICKING ORGANIZTION (DTO)

20.     The Federal Bureau of Investigation (FBI) and members of the Northern Ohio Law Enforcement Task Force (NOLETF) have been investigating the drug trafficking activities of the KHALILAH CRUMPLER, aka BALDY, Drug Trafficking Organization (DTO) since April 2014.  During this investigation, members of NOLETF learned through numerous investigative techniques, as described in paragraph 8 (a) through 8 (n) herein, that KHALILAH CRUMPLER, aka BALDY, and her brother Tajuan Bradberry, aka Bug, run a sophisticated drug trafficking operation which transports kilogram quantities of cocaine and heroin from the Los Angeles, California, area, to the Cleveland, Ohio, area.

21.     Based on Title III wiretap investigation of Walter Walker, aka Turk,[1] and Christopher Fitzgerald, along with the testimony of Walter Walker,[2] investigators learned that between 2014 and 2015, KHALILAH CRUMPLER and others, were shipping kilogram quantities of cocaine, that were secured in pelican cases,[3] from the Los Angeles,

---

[1] Walter Walker is a former member of the KHALILAH CRUMPLER DTO.
[2] In 2017, Walter Walker, a former member of the KHALILAH CRUMPLER DTO, testified during the trial of Christopher Fitzgerald.
[3] Pelican cases are molded plastic containers that seal with an airtight and watertight gasket.  Pelican cases are usually black in color.  Pelican cases include a barometric relief valve to prevent pressure

California area, to the Cleveland, Ohio area, through FedEx.  Investigators learned that CRUMPLER and others utilized FedEx drivers, Christopher Fitzgerald and Rashard Smith to ensure delivery of the kilograms of cocaine.  Your Affiant also knows that the CRUMPLER DTO would send the money back to California utilizing suitcases with hidden compartments.  Based on Confidential Source information, as described in paragraphs 26 and 27 herein, along with Title III wiretap investigation, as described in paragraphs 37, 39 through 45 herein, your Affiant believes that the CRUMPLER DTO supplied kilogram quantities of cocaine to Calvin Locke.  From 2014, through April 2015, members of NOLETF conducted a wiretap investigation[4] into members of the CRUMPLER DTO who were shipping drugs through FedEx. [5]

22.    On April 19, 2016, suspected members of the KHALILAH CRUMPLER DTO, FedEx drivers Christopher Fitzgerald and Rashard Smith, along with Chiquita Anderson, were charged as part of this investigation in the United States District Court, Northern District of Ohio, Eastern Division on a nine-count indictment with charges

damage to the case during transportation or when the air pressure in the environment changes.  Pelican cases can also be secured using a standard lock.

[4] During this investigation, CRUMPLER was intercepted engaging in drug and money related conversations with Christopher Fitzgerald, one of the charged DTO members.

[5] As part of this investigation, as described in paragraphs 20, 21 and 22 herein, on July 7, 2014, Confidential Source (CS#1) stated KHALILAH CRUMPLER was in the Cleveland, Ohio area, for the purpose of collecting money for a past drug shipment.  CS#1 stated CRUMPLER was flying back to California on July 8, 2014.  CS#1 believed CRUMPLER would be transporting the money in her luggage.  Your Affiant notified members of Cleveland Drug Enforcement Administration (DEA).  Members of Cleveland DEA confirmed that on July 8, 2104, CRUMPLER was scheduled to fly from Cleveland Hopkins Airport, to Los Angeles International Airport (LAX), on United Airlines flight 522.  Members of the Cleveland DEA, made arrangements with members of the Los Angeles (LA) DEA, to conduct an interdiction stop of CRUMPLER at LAX. On July 8, 2014, members of the LA DEA conducted an interdiction stop of CRUMPLER at LAX.  During this stop, CRUMPLER was found to have in her possession two carry-on bags and two checked bags.  The checked bags were found to be pelican cases.  At the time of this encounter, investigators did not understand the significance of the pelican cases.  CRUMPLER gave members of LA DEA consent to search her bags and cases.  Members of LA DEA located $6,000 US currency in one of CRUMPLER's carry-on bags.  The US currency was rubber banded in several stacks and consisted mostly of twenty dollar bills, which is consistent with drug proceeds.  Members of LA DEA also observed that CRUMPLER appeared extremely nervous when they began searching the pelican cases.  A search of the pelican cases was negative for contraband and CRUMPLER was released on scene.

including but not limited to Conspiracy to Possess with Intent to Distribute Cocaine.  On March 7, 2017, a jury in the United States District Court, Northern District of Ohio, Eastern Division, found them guilty of all nine counts of the indictment, including but not limited to Conspiracy to Possess with Intent to Distribute Cocaine.

23.     Since the conclusion of the wiretap investigation in April 2015, as described in paragraph 21 herein, investigators continued to receive information that the KHALILAH CRUMPLER DTO was still to operating.

24.     On August 27 2015, investigators from NOLETF interviewed CS#2.  CS#2 stated he/she received kilogram quantities of cocaine from Calvin Locke and Corey Freeman.[6]  CS#2 stated he/she has been supplied cocaine by Locke and Freeman for over three years.  CS#2 stated Locke and Freeman are receiving the cocaine from an unknown source in California.  CS#2 stated he/she was purchasing one or two kilograms of cocaine weekly from Locke and Freeman for $41,000 a kilogram.  CS#2 stated he/she usually met Locke or Freeman at 904 Beverly Drive, in South Euclid, Ohio or at a convenience store in Bedford Heights, Ohio.   CS#2 stated Locke and Freeman fronted the cocaine to him/her.  CS#2 stated he/she would repay Locke and Freeman every three to five days, in increments of $10,000 to $20,000 at a time.  CS#2 stated Locke and Freeman gave him/her a cellular telephone that he/she uses only to talk to Locke and Freeman on.  CS#2 stated Locke and Freeman also sell heroin.

25.     On August 11, 2016, your Affiant interviewed Confidential Source (CS#3). CS#3 stated KHALILAH CRUMPLER owns H2O bar.  CS#3 stated CRUMPLER splits her time living between Cleveland, Ohio and California.  CS#3 stated CRUMPLER used to use

---

6 Based on information from CS#1 and CS#3, as described in paragraphs 26 and 27 herein, your Affiant believes Locke and Freeman are two of CRUMPLER's drug customers.

Christopher Fitzgerald, a FedEx driver, to help her smuggle kilogram quantities of drugs that she had shipped via FedEx from California to the Cleveland, Ohio area.  CS#3 stated CRUMPLER is also known to conceal kilograms of drugs in small safes and ship them to the Cleveland, Ohio area, from California.  CS#3 stated CRUMPLER's brother Tajuan Bradberry, aka Bug, is heavily involved in the DTO.  CS#3 stated Bradberry also travels back and forth between Cleveland, Ohio, and California.  CS#3 stated Bradberry oversees drug distribution operations in the Cleveland, Ohio area.  CS#3 stated CRUMPLER is being supplied both cocaine and heroin from her Mexican boyfriend in California.  At the time CS#3 provided the information, CS#3 estimated that CRUMPLER was shipping 20-30 kilograms of cocaine and heroin per week into the Cleveland, Ohio area.  CS#3's basis of knowledge is from members or associates of the CRUMPLER DTO.

26.     On September 28, 2016, investigators from NOLETF interviewed Confidential Source (CS#1).  CS#1 identified a photograph of Calvin Locke.  CS#1 stated Locke owns "Visions Blu Ultra Lounge."  CS#1 stated Locke used to own another bar on Warrensville Center Road with a partner, but that bar is closed.  CS#1 stated Locke sells cocaine and marijuana for the KHALILAH CRUMPLER DTO.  CS#1's basis of knowledge for this information is through an associate of the DTO.

27.     On October 27, 2016, investigators from NOLETF interviewed Confidential Source (CS#4) CS#4 identified a photograph of Calvin Locke.  CS#4 stated Locke owns "Blu Ultra Lounge" on Euclid Avenue, Cleveland, Ohio.  CS#4 stated Locke is the main Cleveland, Ohio distributor of drugs for KHALILAH CRUMPLER.     CS#4's basis of knowledge for this information is through direct involvement in this DTO and his/her association with members of the DTO.

28.     On November 10, 2016, your Affiant received subpoenaed documents back from the CubeSmart legal department.  Your Affiant found that KHALILAH CRUMPLER and her sister Shawn Bradberry, both had leased storage units at CubeSmart, located at 4720 Warrensville Center Road, North Randall, Ohio.  Subpoenaed records indicated that CRUMPLER leased unit 2107, and Bradberry leased unit 817.  Your Affiant found that on or around October 8, 2016, CubeSmart employees photographed the inside of Unit 817.  Your Affiant also found that on or around October 12, 2016, CubeSmart employees photographed the inside of Unit 2107.  Your Affiant learned from Cubesmart legal department that both unit 817, and 2107, were opened and photographed by CubeSmart employees.   Your Affiant further learned this was done because CRUMPLER and Bradberry failed to maintain their monthly rental payments.   As per CubeSmart legal procedures, entering the storage unit, and photographing the contents was part of the process of enforcing a statutory lien over the storage unit's contents.  Photographing the contents is a CubeSmart standard procedure used to inventory the items inside the storage unit.   These photographs were provided to law enforcement. Your Affiant observed in these photographs several pelican cases and several black suitcases[7] located in the photographs for unit 817.  Your Affiant also learned that both CRUMPLER and Bradberry subsequently paid the money they owed CubeSmart and continued to use their respective storage units.

---

[7] As a result of this wiretap investigation in 2014 and 2015, described in paragraph 21 herein, and the testimony of Walter Walker, as described in footnote 2 herein, investigators learned that KHALILAH CRUMPLER and others, were using pelican cases with locks on them to ship kilogram quantities of cocaine, from the Los Angeles, California area, to the Cleveland, Ohio area, through FedEx. Investigators also learned that the CRUMPLER DTO would send the money back to California using couriers, with suitcases which contained hidden compartments.

29.     On May 5, 2017, investigators from NOLETF interviewed Confidential Source CS#4.  CS#4 stated the KHALILAH CRUMPLER DTO is responsible for bringing approximately 150 kilograms of cocaine and heroin monthly into the Cleveland, Ohio area, from California.  CS#4 basis of knowledge is through associates of this DTO.

30.     On May 22, 2017, members of NOLETF interviewed Confidential Source (CS#4) who stated that Tajuan Bradberry supplies cocaine and heroin to individuals at a car lot located on Woodland Avenue at East 93rd Street, in Cleveland, Ohio.  CS#4 stated the CRUMPLER DTO is buying high end vehicles in California and shipping them to the Cleveland, Ohio area on semi-trucks.  CS#4 stated the cocaine and heroin is hidden in one of these vehicles on the semi-truck. CS#4 basis of knowledge is through associates of this DTO.

31.     On March 27, 2018, investigators from NOLETF interviewed of Confidential Source (CS#1).  CS#1 stated KHALILAH CRUMPLER is currently in the Cleveland, Ohio area, from California, and driving a white Ford F-150, which belongs to her child's father (known to law enforcement as Robert Wilson).   CS#1 stated CRUMPLER is in the Cleveland, Ohio area, to collect drug money from members of her DTO.  CS#1 stated CRUMPLER will remain in the Cleveland, Ohio area for approximately one week.  CS#1's basis of knowledge is through associates of the DTO.

32.     On May 18, 2018, investigators from NOLETF interviewed Confidential Source (CS#5).  CS#5 identified a photograph of Tajuan Bradberry, aka Bug.  CS#5 stated Bradberry supplies heroin and cocaine to the young Lenacrave (a street on the east side of Cleveland, Ohio) drug dealers.  CS#5's basis of knowledge is through associates of the DTO.

33.     On July 31, 2018, investigators from NOLETF interviewed Confidential Source (CS#4).  CS#4 stated KHALILAH CRUMPLER and Tajuan Bradberry are both currently in the Cleveland, Ohio area, from the Los Angeles California area, for the purposes of selling drugs.  CS#4's basis of knowledge is through associates of the DTO.

34.     On August 8, 2018, investigators from NOLETF interviewed Confidential Source (CS#4).  CS#4 stated Calvin Locke still owns Visions Blu Ultra Lounge.  CS#4 stated Locke sells heroin. CS#4 stated he/she had no current knowledge if KHALILAH CRUMPLER and Tajuan Bradberry are supplying Locke with drugs.  CS#4 stated approximately four months ago CRUMPLER and Akim (known to law enforcement as Akinyemi Affrica, aka Michael Jeter) purchased Whitmore's Bar BBQ, on Kinsman Road at East 154th Street, in Cleveland, Ohio.[8]  CS#4 stated they purchased Whitmore's from Vanessa Whitmore.  CS#4 stated Affrica also owns the Swerve Bar and recently purchased a $600,000 to $700,000 house in Hudson, Ohio.  CS#4 stated Affrica was shot recently during a robbery.[9]  CS#4 stated Affrica had approximately $50,000 stolen from him during this robbery.  CS#4 stated Affrica is CRUMPLER's "money guy (someone to launder a drug trafficker's money)."  CS#4 stated CRUMPLER recently married her Mexican boyfriend.[10]  CS#4 stated CRUMPLER has direct ties to the Mexican Mafia through her boyfriend.[11]  CS#4 stated approximately two years ago (around the same time as the shooting at H2O bar), CRUMPLER was tipped off to a law enforcement investigation, by a law enforcement Confidential Source, whom investigators currently

---

[8] Internal Revenue Service (IRS) Special Agent (SA) Michael Fatula confirmed that Akinyemi Affrica had recently purchased Whitmore's BBQ located at 15301 Kinsman Avenue, Cleveland, Ohio.
[9] Your Affiant confirmed that on June 15, 2017, Akinyemi Affrica was shot during a robbery at 13225 Shaker Square, Cleveland, Ohio.
[10] Investigators have confirmed during their investigation of KHALILAH CRUMPLER that she had a child with a Mexican drug trafficker named Jose Rosiles.
[11] Investigators have confirmed that Jose Rosiles has direct connections to the Mexican Mafia.

have not identified.  CS#4 stated that this other CS told CRUMPLER that law enforcement was showing pictures of her to the CS and asking about her activities.  CS#4 stated CRUMPLER paid that CS $20,000 for the information.  CS#4 stated CRUMPLER has been "laying low" since but now believes that investigation has passed.  CS#4 stated that Bradberry is making it known to everyone in the DTO that if anyone is caught "snitching" on the DTO they will be killed.  CS#4 stated which is why if you arrest someone within their DTO, the arrested DTO member will usually go to trial, which proves they did not "snitch."[12]  CS#4 stated CRUMPLER and Bradberry are selling kilograms of heroin for $40,000.  CS#4 stated CRUMPLER and Bradberry's "street soldiers" are reselling the heroin for $75 a gram.  CS#4 stated CRUMPLER and Bradberry are using fentanyl to be able to cut the heroin with which will enable them to add up to twelve times more cutting agent, and thus able to sell the kilograms far cheaper than in the past. CS#4 stated they learned all this information from associates who know members of the DTO.

35.     On July 13, 2018, Judge Christopher A. Boyko, United States District Court, Northern District of Ohio, entered an Order authorizing the interception of wire and electronic communications, including but not limited to text messages, to and from cellular telephone number (216) 904-6560, IMSI 311480374916764, service provided by

---

[12] As described in paragraph 22 herein, in March 2017, three members of CRUMPLER's DTO went to trial and did not cooperate with law enforcement.  During this trial, Walter Walker testified that KHALILAH CRUMPLER had supplied him with cocaine.  Walker testified that he cultivated Christopher Fitzgerald from FedEx, as a transportation method to ship the cocaine, which was locked in plastic pelican cases from the Los Angeles, California area, to the Cleveland, Ohio.  Walker testified that they utilized fake accounts and shipped the cocaine to locations on Fitzgerald's normal delivery route.  Walker also testified that he created suitcases with hidden compartments that they used to transport the money back from the Cleveland, Ohio area, to the Los Angeles, California area.  Walker testified that he taught CRUMPLER how to both ship the cocaine and the money.  Walker testified that CRUMPLER stopped selling him cocaine when he got robbed.  However, CRUMPLER continued to use Fitzgerald and the shipping methods Walker had taught her.  Walker testified that CRUMPLER and Fitzgerald were also partners in the H2O bar.

Verizon Wireless, subscribed to Tracfone, known to be used by John Gray, hereinafter referred to as TT-1. The interception of TT-1 commenced on July 17, 2018.  Interception of TT-1 ceased on August 5, 2018 at 11:59 p.m.

36.     On August 3, 2018, Judge Christopher A. Boyko, United States District Court, Northern District of Ohio, entered an Order authorizing the interception of wire and electronic communications, including but not limited to text messages to and from cellular telephone number (216) 633-7611, IMEI 357725081669708, hereinafter referred to as TT-2, service provided by Verizon, subscribed to Catare W. Allen, 5327 Northfield, Bedford Heights, Ohio, known to be used by Catare Allen and cellular telephone number (216) 210-0515, MEID 99000421641317, hereinafter referred to as TT-3, service provided by Verizon, subscribed to by Tracfone known to be used by Catare Allen. The interception of TT-2 and TT-3 commenced on August 6, 2018.

37.     On September 4, 2018, Judge Christopher A. Boyko, United States District Court, Northern District of Ohio, entered an Order authorizing the continued interception of wire and electronic communications, including but not limited to text messages, to and from TT-2 and TT-3, and the initiation of wire communications to and from cellular telephone number (216) 971-8722, IMEI 358119080192162, hereinafter referred to as TT-4, service provided by AT&T, subscribed to by Blueprint LLC, known to be possessed and used by Calvin Locke, hereinafter referred to as TT-4.  The continued interception of TT-2 and TT-3 and the initiation of interception of wire communications of TT-4 commenced on September 5, 2018.  Interception of TT-2, TT-3, expired on October 3, 2018.

38.     On September 11, 2018, investigators interviewed Confidential Source (CS#6).  CS#6 stated KHALILAH CRUMPLER's DTO is responsible for bringing approximately one hundred kilograms of cocaine and five kilograms of heroin from

California, to the Cleveland, Ohio area, where it is distributed.  CS#6 stated in the mid to late 2000s, Crumpler went to Los Angeles, California, for the National Basketball Association (NBA) All-Star weekend.[13]  CS#6 stated while CRUMPLER was at the NBA All-Star weekend in Los Angeles, California, she met Jose Rosiles.  CS#6 stated CRUMPLER and Rosiles began a personal relationship and eventually had a child together.  CS#6 stated Rosiles also began supplying CRUMPLER with multiple kilograms of cocaine.  CS#6 stated Rosiles moved CRUMPLER from Cleveland, Ohio, to the Los Angeles, California, area and into a million-dollar house.  CS#6 stated Rosiles is currently incarcerated, but CRUMPLER is still getting cocaine and heroin from Rosiles' source of supply.  CS#6 stated CRUMPLER's main drug distributors in the Cleveland, Ohio area are Tajuan Bradberry, aka Bug and Rob (known to law enforcement as Robert Wilson).  CS#6 stated CRUMPLER was recently pregnant with Wilson's child.  CS#6 stated CRUMPLER's sister, Shawn Bradberry, holds money for CRUMPLER.  CS#6 stated Shawn Bradberry lives in a brick house on Ripley Road in Shaker Heights, Ohio.  However, CS#6 is not sure if Shawn Bradberry stores the money there long-term.  CS#6 stated Bradberry is a Corrections Officer at the Justice Center.  CS#6 stated Shawn Bradberry is married to Marvin Long.  CS#6 stated in 2006, he/she was inside Shawn Bradberry's house on Ripley Road and observed numerous kilograms of cocaine.  CS#6 stated Shawn Bradberry may not be directly involved selling drugs for CRUMPLER, but she will allow CRUMPLER to utilize her house to store drugs and money.  CS#6 stated that CRUMPLER used to transport the kilograms of cocaine to the Cleveland, Ohio area, using FedEx.  CS#6 stated CRUMPLER had a FedEx employee who would ensure delivery

---

[13] Investigators found that the NBA All-Star game was held in Los Angeles in 2011.

of the cocaine. CS#6 stated CRUMPLER used this method of transportation until the FedEx employee got arrested. CS#6's basis of knowledge for all of this information is directly from members of CRUMPLER's DTO. CS#6 stated that in 2006 or 2007, he/she observed Calvin Locke in possession of twenty to thirty kilograms of cocaine. CS#6 stated Locke purchased his bar, Visions Ultra Blue Lounge, with drug proceeds. CS#6 stated he/she knows this because Locke told him/her. CS#6 stated that approximately two months ago Locke told him/her that he is currently involved in drug trafficking. CS#6 is unsure who is supplying Locke cocaine. CS#6 stated that approximately two years ago, 92 kilograms of cocaine was seized by the DEA on the upper northeast side of Cleveland, Ohio.[14] CS#6 stated Locke directly complained to him/her about this seizure, leading CS#6 to believe that part of the 92 kilograms of cocaine that was seized was intended for Locke.

39. On October 2, 2018, Judge Christopher A. Boyko, United States District Court, Northern District of Ohio, entered an Order authorizing the continued interception of wire communications of TT-4, and the initiation of interception of wire communications to and from cellular telephone number (213) 332-9925, IMEI 355410076597800, hereinafter referred to as TT-5, service provided by T-Mobile, no subscriber, known to be possessed and used by Tajuan Bradberry, and the initiation of interception of wire and electronic communications to and from cellular telephone number (216) 507-6060, hereinafter referred to as TT-6, service provided by T-Mobile, no subscriber, known to be possessed and used by Calvin Locke. The continuation of interception of TT-4 along with the initiation of interception of TT-5 and TT-6

---

[14] On September 3, 2018, members of DEA Cleveland, arrested two Mexican Males in possession of 92 kilograms on northeast side of Cleveland, Ohio.

commenced October 3, 2018.  Interception of TT-4, TT-5, and TT-6 ended on October 15, 2018.

40.     On October 7, 2018, at approximately 5:34 p.m., TT-5 placed an outgoing telephone call to telephone number (216) 527-4124,[15] wherein Tajuan Bradberry had a conversation with KHALILAH CRUMPLER. CRUMPLER answered, "Yeah."  Bradberry replied, "I know I ain't your most important person now . . . the last person on the totem pole (lower member of the DTO)."  CRUMPLER responded, "Hey, well shit."  Bradberry stated, "Unc (Adrian Bello[16]) done called, Coo Coo (Calvin Locke) that called me yester, Tuesday too, I was like, not Coo Coo too."  CRUMPLER replied, "Huh?"  Bradberry stated, Cal (Calvin Locke) called."  CRUMPLER responded, "Oh."  Bradberry stated, "Yeah." CRUMPLER asked, "For what?"  BRADBERRY responded, "You already know (to buy cocaine)."  CRUMPLER stated, "Bullshit."  Bradberry stated, "Nah, I'm just sayin' like, he, I said, he knows the money now (make more money selling cocaine than marijuana), I was like, oh shit."  CRUMPLER replied, "Well, ain't nothin I can do, shit" Bradberry

[15] On October 2, 2018, investigators intercepted wire communications over TT-5 and TT-6 from telephone number (216) 527-4124, wherein Tajuan Bradberry and Calvin Locke, independently had conversation(s) with KHALILAH CRUMPLER, who at that time was identified as an unknown female.  At approximately 3:55 p.m., an incoming telephone call was received on TT-5 from telephone number (216) 527-4124, wherein Bradberry had a one minute and fifty seven second conversation with CRUMPLER.  On this same date at approximately 3:58 p.m., Bradberry using TT-5 placed an outgoing telephone call to telephone number (216) 527-4124, wherein Bradberry had a three minute and twenty one second communication with CRUMPLER. On October 2, 2018, at approximately 5:05 p.m., Locke using TT-6 placed an outgoing telephone call to telephone number (216) 527-4124, wherein Locke had an eleven minute and ten second communication with CRUMPLER. On October 3, 2018, at approximately 3:00 p.m., investigators from NOLETF were conducting overhears on TT-5 and TT-6.  Upon hearing the aforementioned intercepted wire communications, investigators immediately recognized the female caller's voice as KHALILAH CRUMPLER, from a 2015 wiretap investigation conducted by NOLETF.  Investigators from NOLETF listened to several wire communications from this investigation, wherein KHALILAH CRUMPLER was intercepted using telephone number (213) 948-6902, and compared CRUMPLER's voice to the wire communications which were intercepted over TT-5 and TT-6, and found the voices to be the same, confirming that KHALILAH CRUMPLER is the user of telephone number (216) 527-4124. Additionally, on October 3, 2018, FBI Staff Operations Specialist, Michelle Richardson conducted a database search through Experian for telephone number (216) 527-4124 and learned that telephone number (216) 527-4124 listed to KHALILAH CRUMPLER with an address of 2994 Ripley Road, Shaker Heights, Ohio 44120.
[16] On December 3, 2017 Adrian Bello was arrested in Los Angeles, California in possession of at least 27 kilograms of cocaine.

responded, "I'm just sayin', I'm just sayin, now Coo Coo (Locke) around now (Locke can help sell our shipments of cocaine)."  CRUMPLER stated, "Well, now, I mean shit, cause the nephew (Corey Freeman) talkin' about he (Freeman) was about to catch a dang gone what-its-name (shipment of drugs), so shit, I can't.  That don't mean it's all like that so I don't care, I mean, I can't, I can't do nothin about that (CRUMPLER does not want to sell Locke and Freeman cocaine)."  Bradberry replied, "I'm just sayin' (Bradberry wants to sell Locke and Freeman cocaine)." CRUMPLER responded, "What he (Locke) want to do (how much cocaine does he want to buy), I ain't about to stress myself about something I can't do (CRUMPLER was not sure she could fulfill Locke's cocaine order)."  Bradberry replied, "Yeah, what you [UI]."  CRUMPLER stated, "Then dude (Freeman), you know what I'm sayin', he (Freeman), went out (California) for a couple days, shit, fuck I'm gonna do (Freeman came out to California and did not buy any drugs from CRUMPLER)?"

41.     On October 10, 2018, at approximately 3:13 p.m., TT-4 received an incoming telephone call from telephone number (216) 527-4124, wherein KHALILAH CRUMPLER had a conversation with Tajuan Bradberry.  During this conversation, CRUMPLER stated, "Yeah, I'm tryin' to figure it out, what's his name (Calvin Locke) tryin' to run his ass over here (come to California to buy cocaine) so we'll see."  Bradberry replied, "Calvin (Locke)?"  CRUMPLER replied, "Hopefully he (Locke) come (California) and I have some help (to distribute cocaine in the Cleveland, Ohio area). yeah."  Bradberry responded, "Oh."  CRUMPLER stated, "That might work itself out (I may be able to sell Locke cocaine)."  Bradberry stated, "Yeah, cause I had to hang up on his (Locke) ass again, I mean I hung on them (Locke and Freeman) the other day cause he gonna, look, he (Locke) gonna call me right? So I was like what's up, meet me at Frederick's, you know, he (Locke) was like, 'Alright.'  So I called him back again in an

hour and I said, 'Where you at?'  He was like, 'Oh, I'm at my mother's still, you want to come over here?' I was like, 'No' and I hung up on him cause, he keeps asking, you know asking me (to buy cocaine) you know, like, dude, like."  CRUMPLER replied, "He (Locke) so, you know what the nephew (Freeman) said, a n***a always tryin' to do something (sell cocaine) ain't got nothin' (doesn't have cocaine)."

42.     On October 10, 2018, at approximately 3:42 p.m., an incoming telephone call was received on TT-5 from TT-4, wherein Tajuan Bradberry had a two minute and nine second conversation with Calvin Locke.  In summary, Locke was requesting to meet with Bradberry to talk about DTO business. Bradberry informed Locke that he (Bradberry) was at his mom's house, which investigators identified as 19411 Lanbury Dr. Warrensville Hts. Ohio.  Locke stated, "I want to run into you about something (I want to meet and talk about drugs). I know you be busy, I want to catch you in the morning." Bradberry replied, "Where you at?" Locke replied, "I here with nephew (Cory Freeman), I just jumped in with neph, how long are you going to be over there?" Bradberry replied, "Until about 5 or 6." Locke replied, "Alright, we on our way over there. I'm about to stop and holler at you, nephew with me." Bradberry replied, "Alright."  At approximately 3:56 p.m., Calvin Locke using TT-4 made an outgoing telephone call to TT-5 wherein Locke informed Bradberry that Locke and Cory Freeman were outside (19411 Lanbury Dr.).  A review of precise cellular telephone location data for TT-4 and TT-5 placed both devices in the vicinity of 19411 Lanbury Dr.  At approximately 3:59 p.m., as Bradberry, Locke and Freeman were together, Bradberry made an outgoing telephone call from TT-5 to telephone number (216) 527-4124, wherein Bradberry had a conversation with KHALILAH CRUMPLER. In summary, Bradberry told CRUMPLER that he (Bradberry) was with Calvin Locke and Cory Freeman and needed to talk with her (CRUMPLER).

CRUMPLER informed Bradberry that she was getting an estimate on her car and ended the conversation. Investigators believe that Locke, Bradberry and Freeman were meeting to discuss a future shipment of drugs.

43.     On October 11, 2018, at approximately 10:04 a.m., Tajuan Bradberry made an outgoing telephone call from TT-5 to TT-4, wherein Bradberry had a conversation with Calvin Locke.  After the initial greeting, Bradberry stated, "What's up, you over your mom's?" Locke replied, "Yeah I went and stayed over here." Bradberry replied, "Alright." Locke replied, "What's up with you, were you at?"  Bradberry replied, "Um . . . I'll be over in an hour, I going to bring you that (suitcase with a hidden compartment) and show you." Locke replied, "Okay." Bradberry replied, "Yep, yep and show you um . . . what's the street, I be getting confused?"  Locke replied, "Laing (mom's street)." Bradberry replied, "Okay, I got you, I got you." Based on that call, investigators believed that Bradberry was going to bring Locke a quantity of drugs to Locke's mother's house on Laing.  An investigator from NOLETF conducted an open database search for Calvin Locke's family associates and obtained the address of 24200 Laing Road, Bedford Heights, Ohio. Members of NOLETF responded to this location and initiated surveillance.  At approximately 10:35 a.m., an investigator from NOLETF observed a 2007 white GMC Yukon bearing Ohio registration GDE4280 known to be used and operated by Calvin Locke parked unoccupied in the driveway at 24200 Laing Rd.   At approximately 11:26 a.m., an incoming telephone call was received on TT-5 from TT-4, which went unanswered.  At this same time, another investigator from NOLETF observed a red Chevrolet Corvette bearing Ohio registration HEU4968 pulling into the driveway at 24200 Laing Road.  The driver, identified as Tajuan Bradberry, exited the vehicle wearing black sweat pants, a black hoodie and white tennis shoes. Bradberry

walked around to the passenger's door of the Corvette, opened the passenger's door and removed a black suitcase with rollers. Bradberry rolled the suitcase up the driveway and entered the residence. Based upon intercepted wire communications, investigators believed that the black suitcase contained a large quantity of cocaine and/or heroin.  At approximately 12:05 p.m., NOLETF investigators observed Tajuan Bradberry exit the residence without the suitcase and he departed in his Corvette. This corroborated the belief that Bradberry just supplied Calvin Locke with a large quantity of drugs, which were now inside the Laing Road residence.

44.     On October 11, 2018, at approximately 12:10 p.m., a NOLETF investigator observed Calvin Locke open the attached garage door, exit, and begin walking towards the white GMC Yukon parked in the driveway. At this same time, investigators approached Locke in the driveway. Locke signed a consent to search form allowing investigators to search the Laing Road residence.  At 12:22 p.m., investigators entered the premises and a systematic search was initiated. In plain view lying on the kitchen floor was the black Samsonite suitcase that investigators observed Tajuan Bradberry wheeling into the residence. The suitcase had a white name placard "Bradberry/TA" with corresponding numbers 3016665993 affixed to the top of the suitcase. The contents of the suitcase were completely empty.  At approximately 12:30 p.m., Patrol Officer Matt Troyer and his K-9 partner arrived and completed a sniff of the inside and outside of the premises. PO Troyer's K-9 partner alerted strongly for the odor of narcotics on the black Samsonite suitcase in the kitchen that Tajuan Bradberry had brought into the residence. Investigators observed this suitcase to have a hidden compartment,[17] which was also

---

[17] Investigators know based on testimony from Walter Walker, a former member of the DTO, during the 2017 trial of the three DTO members, that the CRUMPLER DTO transports drug proceeds in suitcases with hidden compartments from Cleveland, Ohio, to Los Angeles, California using suitcases with hidden

empty.  Investigators recovered a Ruger 9mm semiautomatic handgun, loaded with seventeen (17) live rounds, a plastic packaging wrapper commonly used to vacuum seal one kilogram of cocaine/heroin in the attached garage, miscellaneous paperwork in the name of Calvin Locke, a plastic bag containing a small amount of marijuana and $5,000.00 dollars in U.S. Currency were recovered.  Your Affiant and investigators now believe Bradberry brought over the suitcase with the hidden compartment for Locke to transport money from Cleveland, Ohio, to Los Angeles, California, for the purpose of buying multiple kilograms of cocaine from KHALILAH CRUMPLER and Tajuan Bradberry.

45.     On October 11, 2018, at approximately 3:59 p.m., an incoming telephone call was received over TT-5, from telephone number (216) 527-4124, wherein KHALILAH CRUMPLER had a conversation with Tajuan Bradberry.  During this conversation, CRUMPLER asked Bradberry what he was doing.  Bradberry informed CRUMPLER that he was doing something with his family.  CRUMPLER replied, "Oh, uh, what's his name (Calvin Locke) you need, um, what's his name (Calvin Locke) right now."  Your Affiant believes that CRUMPLER wanted Bradberry to call Locke to find out about the law enforcement action described in paragraph 44 herein.

46.     In April, 2019, your Affiant interviewed Confidential Source (CS#7). CS#7 stated he/she was a member of the KHALILAH CRUMPLER, aka BALDY DTO, with Tajuan Bradberry, aka Bug, and others.  CS#7 stated he/she was involved in the DTO for approximately five years.  CS#7 stated CRUMPLER obtains kilograms of cocaine from a California based supplier.  CS#7 stated CRUMPLER then ships the kilograms of cocaine

---

compartments.

to the Cleveland, Ohio area, for distribution. CS#7 stated the CRUMPLER DTO was bringing approximately 10 to 80 kilograms of cocaine monthly from California, to the Cleveland, Ohio area. CS#7 stated the CRUMPLER DTO used to transport the kilograms of cocaine through FedEx, secured in pelican cases with locks, using a FedEx driver named Christopher Fitzgerald. CS#7 stated the money was sent back to California from Cleveland using couriers, with suitcases with hidden compartments. CS#7 stated once Fitzgerald was arrested, the CRUMPLER DTO began transporting the kilograms of cocaine from California to the Cleveland, Ohio area, in vehicles with hidden compartments. CS#7 stated the money would be sent back to California most of the time, in the same vehicles. However, CS#7 stated on occasion they would still use the suitcases with the hidden compartments. CS#7 stated each suitcase would contain $110,000 to $150,000. CS#7 stated CRUMPLER handled all money transactions with the California supplier. CS#7 stated CRUMPLER never touched the drugs, and she was rarely in the same place the drugs were at. CS#7 stated CRUMPLER lives in Rancho Cucamonga, California, in a house. CS#7 stated in December 2017, he/she has been inside CRUMPLER's house when a large amount of US currency was present. CS#7 stated he/she is still in regular communication with CRUMPLER. CS#7 provided telephone number (216) 527-4124,[18] as the phone number where he/she communicates with CRUMPLER.[19] CS#7 identified a photograph of Akinyemi Affrica, aka Michael Jeter, as

---

[18] Your Affiant received subpoenaed subscriber information for telephone number (216) 527-4124, from May 1, 2018 through May 8, 2019. Your Affiant found the service activation date telephone number (216) 527-4124, was October 29, 2016, with the customer name of "IN PREPAID none CUSTOMER." Your Affiant found this service ended on October 12, 2018 at 7:00 UTC. However, your Affiant found that on October 12, 2018, at 7:00 UTC, service for telephone number (216) 527-4124 was activated with the same customer name. Thus, your Affiant believes that KHALILAH CRUMPLER was notified by Calvin Locke of law enforcement action that occurred on October 11, 2018, as described in paragraphs 44 and 45 herein, and fearing a law enforcement investigation she changed the handset of the telephone, but kept the same telephone number with the new handset.

[19] Your Affiant received subpoenaed toll data for telephone number (216) 527-4124, from March 7, 2019

a male CS#7 knows as Michael Jeter or Akin.  CS#7 knows Akinyemi Affrica, aka Michael Jeter used to deal drugs.  CS#7 stated CRUMPLER used date Akinyemi Affrica aka Michael Jeter.  CS#7 stated sometime around December 2017, CRUMPLER started a business called Trillionare Tykes, which was an online clothing store.  CS#7 stated many years before that CRUMPLER had a business called Saucy Couture which was in the mall in Cleveland, Ohio.  CS#7 stated to his/her knowledge CRUMPLER did not own or operate any other businesses.  CS#7 stated to his/her knowledge CRUMPLER did not have a legitimate source of income to support her lifestyle.  CS#7 stated that CRUMPLER and Bradberry know not to put large amounts of cash into bank accounts.  CS#7 does not know where CRUMPLER or Bradberry keep their money because this was something they did not discuss with each other.  CS#7 stated that he/she is no longer actively involved in the DTO, but based on his/her observations of other members of the DTO, including Bradberry, CS#7 believes that CRUMPLER's DTO is presently active and distributing drugs in the Cleveland, Ohio, area.

47.     On May 13, 2019, your Affiant provided several photographs of 13361 Highstone Manor Court, Rancho Cucamonga, California to CS#7.  CS#7 positively identified the photographs of 13361 Highstone Manor Court, Rancho Cucamonga, California as CRUMPLER's residence, where he/she has observed a large amount of US currency.

48.     On May 14, 2019, United States Magistrate Thomas M. Parker, Northern District of Ohio, signed a search warrant authorizing the acquisition of precise location information for cellular telephone number (216) 527-4124, known to be possessed and

---

through May 8, 2019, and confirmed regular communication between CRUMPLER and CS#7.

used by KHALILAH CRUMPLER.   On May 16, 2019, at approximately 1:42 a.m., Pacific

Standard Time (PST) investigators began receiving data for the precise location for

cellular telephone number (216) 527-4124.  Location information's, in Affiant's experience

in this case and others, is not exact and often provides a wide range of an area in which

the telephone's user may be located.  This information,[20] however, combined with CS#7's

information, as described in paragraph 46 herein, computerized checks,[21] subpoenaed

bank records,[22] money orders (which showed that CRUMPLER paid the rent at 13361

Highstone Manor Court, Rancho Cucamonga, California as recently as April 2019, as

described in paragraphs 62 through 64 herein), subpoenaed FedEx Express Shipping

Records[23] and United States Postal Service (USPS) information[24] has allowed

[20] On May 16, 2019, at approximately 1:42 a.m., PST, precise location data placed telephone number (216) 527-4124, in the area of 13361 Highstone Manor Court, Rancho Cucamonga, California, where it remained until approximately 10:42 a.m., PST.  Precise location data then showed CRUMPLER's telephone travel from 13361 Highstone Manor Court, Rancho Cucamonga, California, to LAX Airport, then on to Dallas Fort Worth Airport, and arriving at Cleveland Hopkins Airport.  CRUMPLER's telephone remained in the Cleveland, Ohio area until May 25, 2019.  On May 25, 2019, CRUMPLER's telephone traveled from Cleveland Hopkins Airport, to Dallas Fort Worth Airport, and arrived at LAX Airport at approximately 12:08 p.m., PST.  Precise location data showed CRUMPLER's telephone travel from LAX Airport, to the area of 13361 Highstone Manor Court, Rancho Cucamonga, California, arriving at approximately 1:53 p.m., PST.  Your Affiant has reviewed precise location data from May 25, 2019, through May 30, 2019 (a total of five evenings).  Your Affiant has found that CRUMPLER's telephone has remained in the area of 13361 Highstone Manor Court, Rancho Cucamonga, California during evening hours in which people are normally asleep.  Thus, your Affiant believes that KHAHLILAH CRUMPLER is living at 13361 Highstone Manor Court, Rancho Cucamonga, California.
[21] On May 20, 2019, your Affiant ran a computerized Accurint database search of KHALILAH CRUMPLER.  Your Affiant discovered from March 2015, through April 2019, CRUMPLER used 13361 Highstone Manor Court, Rancho Cucamonga, California as her home address.  Your Affiant also ran a computerized CLEAR database of KHALILAH CRUMPLER.  Your Affiant found CRUMPLER used 13361 Highstone Manor Court, Rancho Cucamonga, California as her home address, from March 9, 2015, through September 30, 2018, with Equifax, Experian, Experian Gateway, TransUnion Gateway and a utility listing as being the sources of this information.  Your Affiant further discovered in this check that also listed her telephone number as (216) 527-4124.
[22] Subpoenaed records from Bank of America, showed that in December 2018, KHALILAH CRUMPLER began having her bank statements mailed to 13361 Highstone Manor Court, Rancho Cucamonga, California.  To Investigators' knowledge, this account is still active and the bank statements are currently still being mailed to 13361 Highstone Manor Court, Rancho Cucamonga, California.
[23] FedEx Express shipping records show from July 27, 2018, through April 10, 2019, a total of 13 packages were delivered to 13361 Highstone Manor Court, Rancho Cucamonga, California in the names of KAY CRUMPLER or KHALILAH CRUMPLER.
[24] Your Affiant learned from USPI Inspector Marc Kudley that on May 28, 2019, a package was delivered through USPS to KHALILAH CRUMPLER at 13361 Highstone Manor Court, Rancho Cucamonga,

investigators to clearly identify that KHALILHAH CRUMPLER is living at 13361 Highstone Manor Court, Rancho Cucamonga, California.

## FINANCIAL INVESTIGATION OF KHALILAH CRUMPLER

### FINANCIAL INFORMATION

### SUMMARY OF BUSINESSES

49.     Per review of documents filed with the California Secretary of State, KHALILAH CRUMPLER established three businesses in California as follows:

| California Secretary of State Filings | | | |
|---|---|---|---|
| Name | Date | Incorporator | Additional Members |
| Poshlum, LLC | 12/02/2013 | CRUMPLER | Norman Ford |
| Trillionaire Tykes, LLC | 06/18/2014 | CRUMPLER | Erin Price |
| 2 Saucie Productions, LLC | 08/08/2014 | CRUMPLER | None |

50.     Per review of documents filed with the Ohio Secretary of State, KHALILAH CRUMPLER established two businesses in Ohio.  CRUMPLER is the owner of SAUCIE COUTURE, LTD.  Per a review of documents filed with the Ohio Secretary of State, SAUCIE COUTURE was established in July 2006.  The purpose of this company was listed as "Clothing Company (apparel)".

51.     Review of documents filed with the Ohio Secretary of State shows KHALILAH CRUMPLER is also the owner of TRILLIONAIRE TYKES, LLC.  Per a review of documents filed with the Ohio Secretary of State, this business was established in January 2018.  The purpose of this company was listed as "CHILDREN'S APPAREL".  Carol Mason is listed as an additional member of the business.  IRS Special Agent Mike

---

California.   On April 20, 2019, a package was delivered to Nubian Prince, Chaz (CRUMPLER's son) and Kay (KHALILAH CRUMPLER) at 13361 Highstone Manor Court, Rancho Cucamonga, California from Shawn Bradberry (KHALILAH CRUMPLER's sister), at 2994 Ripley Road, Shaker Heights, Ohio.

Fatula conducted an online search for TRILLIONAIRE TYKES and found a website for the business as being [www.trillionairetykes.com](www.trillionairetykes.com).  The website is an online kids clothing store and has various clothing items for sale ranging from $20 to $75.

52.     Per review of documents filed with the Ohio Secretary of State, KHALILAH CRUMPLER's sister, Shawn Bradberry, is the listed owner of H2O ULTRA LOUNGE, LLC.  Per a review of documents filed with the Ohio Secretary of State, this business was established in May 2015.  The purpose of this company was not listed. Investigators know from surveillance that H2O ULTRA LOUNGE was a bar located at 21300 Libby Road, Maple Heights, Ohio.  Based on a review of financial records, intercepted wire communications, and information provided by confidential sources, your Affiant knows that H2O ULTRA LOUNGE was owned and started by CRUMPLER and Christopher Fitzgerald in 2015.  In October 2016, the bar was closed by law enforcement after a fatal shooting and large fight occurred at the bar.

53.     Per review of documents filed with the Ohio Secretary of State, Shawn Bradberry, is the listed owner of KC MANAGEMENT GROUP, LLC.  A review of documents filed with the Ohio Secretary of State, this business was established in August 2014.  The purpose of this company was not listed.  Christopher Fitzgerald is listed as an additional member of the business.

54.     Through the issuance of grand jury subpoenas, investigators identified bank accounts for POSHLUM, 2 SAUCIE PRODUCTIONS, SAUCIE COUTURE, KC MANAGEMENT GROUP, and H2O ULTRA LOUNGE.  Investigators have not identified any bank accounts in the name of TRILLIONAIRE TYKES.  The analysis of these accounts is presented in the **<u>SUMMARY OF BANK ACCOUNTS</u>** section below.

## SUMMARY OF BANK ACCOUNTS

55.    Records obtained through the issuance of Grand Jury subpoenas revealed that KHALILAH CRUMPLER is the sole signatory authority on a bank account in the name of POSHLUM, LLC held at Bank of America.  This bank account was opened in June 2014 and is believed to be active based on the last statements investigators received for December 2018.

56.    Records obtained through the issuance of Grand Jury subpoenas revealed that KHALILAH CRUMPLER previously held personal bank accounts at JP Morgan Chase Bank, US Bank and Wells Fargo Bank.  In April 2007, CRUMPLER opened an account at JP Morgan Chase Bank in the name of SAUCIE COUTURE, LLC.  In July 2007, Jose Rosiles (as described in paragraph 38 herein) was added as a signatory authority on the account.  In October 2014, JP Morgan Chase Bank closed the account.

57.    In April 2007, KHALILAH CRUMPLER opened a personal account at JP Morgan Chase Bank.  CRUMPLER held the account jointly with her mother, Carol Mason.  This account was closed by the bank in September 2014.

58.    In June 2014, KHALILAH CRUMPLER opened a personal account in her name at US Bank.  CRUMPLER was the sole signatory authority on the account.  In May 2017, US Bank closed the account.

59.    In August 2014, KHALILAH CRUMPLER opened a business account in the name of 2 SAUCIE PRODUCTIONS, LLC at Wells Fargo Bank.  CRUMPLER was the sole signatory authority on the account.  In May 2017, Wells Fargo Bank closed the account.

60.     Records obtained through the issuance of Grand Jury subpoenas revealed that Shawn Bradberry opened a business account at JP Morgan Chase Bank in the name of KC MANAGEMENT GROUP, LLC.  The account was opened on September 3, 2014 and the business address was listed as 21300 Libby Road, Maple Heights, Ohio25. Review of the signature card for the account revealed that Christopher Fitzgerald had signatory authority on the account.  In April 2015, JP Morgan Chase Bank closed the account.  Records obtained through the issuance of Grand Jury subpoenas revealed that Shawn Bradberry is the sole signatory authority on a bank account in the name of H2O ULTRA LOUNGE, LLC held at PNC Bank.

61.     Examination of the financial records for the accounts, as described in paragraphs 55through 60 herein, revealed that all of the accounts were primarily funded by cash deposits.  Analysis of the deposit items for all seven accounts revealed total deposits of $1,283,154.11.  Of that, the cash deposits totaled $1,115, 956.82 or approximately 87% of total deposits.  IRS Special Agent Mike Fatula reviewed the bank statements and deposit items for all seven accounts.  As stated above, the vast majority of the deposits consisted of cash.  The remaining deposits appeared to be personal in nature and consisted of checks, transfers and merchant credits for returned/refunded goods.  Special Agent Fatula reviewed the debits including the ACH payments and cancelled checks for the accounts and he provided that the vast majority of the expenses in all of the accounts appear to be personal in nature.  For example, typical expenses from the accounts include payments to restaurants, Mercedes Benz Financial Services,

---

[25] As described in paragraph 53, 21300 Libby Road, Maple Heights, Ohio is the address for H2O LOUNGE.

LA Fitness, Lyft Ride, credit cards, gas stations, utility companies, and hotels.  Based

upon the overall monthly activity of the accounts, investigators believe that CRUMPLER

deposits only cash into the accounts on an as needed basis to cover her living expenses.

The account activity described above does not resemble normal business activity that

one would expect to see in a business account.   A summary of the deposits for the

accounts is illustrated in the table below:

| Account | Date Range | Total Deposits | Cash Amount | Signatory |
|---------|------------|----------------|-------------|-----------|
| JPMC x4851 in the name of Saucie Couture | 01/01/12 - 10/09/14 | $314,999.62 | $289,990.00 | KHALILAH CRUMPLER & Jose Rosiles |
| JPMC x1617 in the name of KHALILAH CRUMPLER and Carol Mason | 01/04/12 - 09/05/14 | $65,949.60 | $59,839.00 | KHALILAH CRUMPLER & Carol Mason |
| US Bank x3547 in the name of KHALILAH CRUMPLER | 07/15/14 - 09/22/17 | $146,029.99 | $89,672.24 | KHALILAH CRUMPLER |
| JPMC x3150 in the name of KC Management Group, LLC | 09/03/14 - 04/30/15 | $36,924.71 | $29,368.58 | Christopher Fitzgerald & Shawn Bradberry |
| Bank of America x1741 in the name of Poshlum, LLC | 01/01/15 - 12/26/18 | $384,009.92 | $370,877.00 | KHALILAH CRUMPLER |
| Wells Fargo x3640 in the name of 2 Saucie Productions | 04/01/15 - 11/08/18 | $219,232.25 | $176,335.00 | KHALILAH CRUMPLER |
| PNC Bank x0766 in the name of H2O Lounge | 07/30/15 - 04/21/17 | $116,008.02 | $99,875.00 | Shawn Bradberry |
| | Totals | $1,283,154.11 | $1,115,956.82 | |

## SUMMARY OF MONEY ORDERS

62.     For the period September 16, 2014 through April 4, 2019, investigators

have identified 128 Postal money orders totaling $118,768 that were purchased by

KHALILAH CRUMPLER and/or other DTO members.  A summary of the money order

purchases is presented below:

| Pay to | From | Date Range | Number of Money Orders | Total |
|--------|------|-----------|------------------------|-------|
| Jennifer or Jennifer Shaw | K CRUMPLER or CRUMPLER | 2/13/17 – 04/4/19 | 52 | $47,200 |
| Encloth26 | CRUMPLER or Trillionaire Tykes or Poshlum | 04/02/15 – 07/06/18 | 38 | $37,768 |
| JP Lending Group | K CRUMPLER or CRUMPLER | 06/14/14 – 10/05/16 | 34 | $29,800 |
| Christ Church of the Valley | KHALILAH CRUMPLER | 05/01/15 | 4 | $4,000 |
| Totals | | | 124 | $118,768 |

63.     The investigation revealed that from June 2014 through at least April 4

2019, KHALILAH CRUMPLER used Postal money orders to pay rent for 13361

Highstone Manor Court, Rancho Cucamonga, California.  A review of San Bernardino

County property records indicates that 13361 Highstone Manor Court, Rancho

Cucamonga, California was purchased on June 27, 2008 by Jennifer Fu-Man  Shaw and

Ronnie Fu-Man Shaw.  On October 18, 2016, Jennifer Fu-Man Shaw transferred her

50% ownership into the name of 2016 Jennifer Fu-Man Shaw Trust dated October 3,

2016.

64.     From September 16, 2014 to October 5, 2016, a total of 34 money orders

were purchased and made payable to JP Lending Group.  The majority of the money

orders referenced rent in the memo line with several listing "13361 Highstone".  From

February 13, 2017 to April 4, 2019, a total of 52 money orders were purchased and made

payable to Jennifer or Jennifer Shaw.  The majority of these money orders also

---

26 An online search of Encloth.com revealed that Encloth is a global apparel manufacturer and contracting company based in Atlanta, Georgia.

reference "rent" in the memo line.  Based on the total amount of money orders referencing rent each month, investigators believe that KHALILAH CRUMPLER is paying at least $3,600 in rent per month which totals at least $43,200 per year.  The last group of transactions was conducted on April 3, 2019 and April 4, 2019 when CRUMPLER purchased a total of four money orders totaling $3,600.

65.     Title 31 U.S.C. § 5325 provides that no financial institution may issue or sell a bank check, cashier's check, traveler's check, or money order to any individual in connection with a transaction or group of such contemporaneous transactions which involves United States coins or currency in amount or denominations of $3,000 or more unless the individual furnishes the financial institution with such forms of identification.  If an individual purchases $3,000 or more in money orders  in connection with a transaction or group of such contemporaneous transactions from the Post Office, the clerk is required to complete a Funds Transaction Report and the customer would have to provide his/her identification.  Title 31 U.S.C. § 5324(a) prohibits structuring for the purpose of evading a reporting requirement under Title 31 U.S.C. § 5325.

66.     From an analysis of the purchase dates, serial numbers and post office locations, your affiant believes that the majority of the money orders were purchased with the intent to evade the reporting requirements of the Post Offices.  The table below details the structured money order purchases by KHALILAH CRUMPLER and/or co-conspirators[27]:

---

[27] Investigators do not know who purchased the money orders listed in the table below.  When the Post Office issues a money order, the "Pay to" and "From" sections are blank.  These sections are typically filled out when the purchaser uses the money order.  Based upon review of the money orders in the table below, investigators believe that they were purchased on behalf of CRUMPLER as they list either her name or her known company names in the "From" section.

| Purchase Date | Serial Number | Amount | Post Office* | Pay to |
|---|---|---|---|---|
| 12/02/2014 | 2211062059 | $1,000.00 | 91739 | JP Lending Group |
| 12/02/2014 | 2211062060 | $600.00 | 91739 | JP Lending Group |
| 12/02/2014 | 2246460715 | $1,000.00 | 91729 | JP Lending Group |
| 12/02/2014 | 2246460716 | $500.00 | 91729 | JP Lending Group |
| 04/02/2015 | 2258560581 | $1,000.00 | 91762 | Encloth |
| 04/02/2015 | 2258560582 | $1,000.00 | 91762 | Encloth |
| 04/02/2015 | 2258562461 | $1,000.00 | 91762 | Encloth |
| 04/02/2015 | 2258562462 | $1,000.00 | 91762 | Encloth |
| 04/02/2015 | 2246467155 | $1,000.00 | 91729 | Encloth |
| 04/02/2015 | 2246467156 | $768.00 | 91729 | Encloth |
| 04/02/2015 | 2213834788 | $1,000.00 | 91785 | Encloth |
| 04/02/2015 | 2213834789 | $1,000.00 | 91785 | Encloth |
| 04/02/2015 | 2213838948 | $1,000.00 | 91785 | Encloth |
| 04/02/2015 | 2213835949 | $1,000.00 | 91785 | Encloth |
| 05/05/2015 | 2251014260 | $1,000.00 | 91739 | JP Lending Group |
| 05/05/2015 | 2251014261 | $600.00 | 91739 | JP Lending Group |
| 05/05/2015 | 2251014321 | $1,000.00 | 91739 | JP Lending Group |
| 05/05/2015 | 2251014322 | $1,000.00 | 91739 | JP Lending Group |
| 05/28/2015 | 2278513126 | $1,000.00 | 91729 | Encloth |
| 05/28/2015 | 2278513127 | $1,000.00 | 91729 | Encloth |
| 05/28/2015 | 2251013713 | $1,000.00 | 91739 | Encloth |
| 06/01/2015 | 2251014668 | $1,000.00 | 91739 | Encloth |
| 06/01/2015 | 2251014579 | $1,000.00 | 91739 | JP Lending Group |
| 06/01/2015 | 2251014580 | $1,000.00 | 91739 | JP Lending Group |
| 06/01/2015 | 2251014581 | $600.00 | 91739 | JP Lending Group |
| 06/01/2015 | 2251014669 | $1,000.00 | 91739 | JP Lending Group |
| 06/26/2015 | 2278514312 | $1,000.00 | 91729 | Encloth |
| 06/26/2015 | 2278514313 | $1,000.00 | 91729 | Encloth |
| 06/26/2015 | 2278515177 | $1,000.00 | 91729 | Encloth |
| 06/26/2015 | 2278515178 | $1,000.00 | 91729 | Encloth |
| 06/30/2015 | 2278515204 | $1,000.00 | 91729 | Encloth |
| 06/30/2015 | 2278515816 | $1,000.00 | 91729 | Encloth |
| 06/30/2015 | 2278515817 | $1,000.00 | 91729 | Encloth |
| 06/30/2015 | 2251014994 | $1,000.00 | 91739 | Encloth |
| 06/30/2015 | 2251014995 | $1,000.00 | 91739 | Encloth |
| 02/03/2016 | 2333504665 | $1,000.00 | 91729 | JP Lending Group |
| 02/03/2016 | 2333504666 | $600.00 | 91729 | JP Lending Group |
| 02/03/2016 | 2341110393 | $1,000.00 | 91739 | JP Lending Group |
| 02/03/2016 | 2341110394 | $1,000.00 | 91739 | JP Lending Group |
| 09/06/2016 | 2341112396 | $1,000.00 | 91739 | JP Lending Group |

| | | | | |
|---|---|---|---|---|
| 09/06/2016 | 2341112397 | $600.00 | 91739 | JP Lending Group |
| 09/06/2016 | 2390265517 | $1,000.00 | 91739 | JP Lending Group |
| 09/06/2016 | 2390265518 | $1,000.00 | 91739 | JP Lending Group |
| 10/04/2016 | 2390266038 | $600.00 | 91739 | JP Lending Group |
| 10/05/2016 | 2390266057 | $1,000.00 | 91739 | JP Lending Group |
| 10/05/2016 | 2390266058 | $1,000.00 | 91739 | JP Lending Group |
| 10/05/2016 | 2390266059 | $1,000.00 | 91739 | JP Lending Group |
| 02/13/2017 | 2434572691 | $1,000.00 | 91739 | Jennifer |
| 02/13/2017 | 2467572692 | $600.00 | 91739 | Jennifer |
| 02/13/2017 | 2434572791 | $1,000.00 | 91739 | Jennifer |
| 02/13/2017 | 2434572792 | $1,000.00 | 91739 | Jennifer |
| 03/06/2017 | 2390266241 | $1,000.00 | 91739 | Jennifer Shaw |
| 03/06/2017 | 2390266242 | $1,000.00 | 91739 | Jennifer Shaw |
| 03/06/2017 | 2390266261 | $1,000.00 | 91739 | Jennifer Shaw |
| 03/06/2017 | 2390266262 | $600.00 | 91739 | Jennifer Shaw |
| 07/05/2017 | 2434574774 | $1,000.00 | 91739 | Jennifer Shaw |
| 07/05/2017 | 2434574775 | $600.00 | 91739 | Jennifer Shaw |
| 07/05/2017 | 2466135007 | $1,000.00 | 91739 | Jennifer Shaw |
| 07/05/2017 | 2466135008 | $1,000.00 | 91739 | Jennifer Shaw |
| 12/05/2017 | 2466137117 | $1,000.00 | 91739 | Jennifer Shaw |
| 12/05/2017 | 2466137118 | $1,000.00 | 91739 | Jennifer Shaw |
| 12/06/2017 | 2466136641 | $1,000.00 | 91739 | Jennifer Shaw |
| 12/06/2017 | 2466136642 | $600.00 | 91739 | Jennifer Shaw |
| 01/08/2018 | 2466137035 | $1,000.00 | 91739 | Jennifer Shaw |
| 01/08/2018 | 2466137036 | $600.00 | 91739 | Jennifer Shaw |
| 01/09/2018 | 2466137045 | $1,000.00 | 91739 | Jennifer Shaw |
| 01/09/2018 | 2466137046 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/05/2018 | 2466136829 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/05/2018 | 2466136830 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/05/2018 | 2466136844 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/05/2018 | 2466136845 | $600.00 | 91739 | Jennifer Shaw |
| 04/04/2018 | 2494700948 | $1,000.00 | 91739 | Jennifer Shaw |
| 04/04/2018 | 2494700949 | $600.00 | 91739 | Jennifer Shaw |
| 04/05/2018 | 2494700459 | $1,000.00 | 91739 | Jennifer Shaw |
| 04/05/2018 | 2494700460 | $1,000.00 | 91739 | Jennifer Shaw |
| 04/12/2018 | 2494700997 | $1,000.00 | 91739 | Encloth |
| 04/16/2018 | 2494701236 | $1,000.00 | 91739 | Encloth |
| 04/16/2018 | 2494701237 | $1,000.00 | 91739 | Encloth |
| 04/19/2018 | 2494701264 | $1,000.00 | 91739 | Encloth |
| 04/19/2018 | 2494701265 | $1,000.00 | 91739 | Encloth |
| 05/04/2018 | 2494701338 | $1,000.00 | 91739 | Jennifer Shaw |
| 05/04/2018 | 2494701339 | $600.00 | 91739 | Jennifer Shaw |

| 05/05/2018 | 2499506552 | $1,000.00 | 91729 | Jennifer Shaw |
| 05/05/2018 | 2499506553 | $1,000.00 | 91729 | Jennifer Shaw |
| 05/21/2018 | 2494701646 | $1,000.00 | 91739 | Encloth |
| 05/21/2018 | 2494701647 | $1,000.00 | 91739 | Encloth |
| 05/23/2018 | 2494701169 | $1,000.00 | 91739 | Encloth |
| 05/23/2018 | 2494701170 | $1,000.00 | 91739 | Encloth |
| 05/24/2018 | 2499506963 | $1,000.00 | 91729 | Encloth |
| 05/25/2018 | 2494701180 | $1,000.00 | 91739 | Encloth |
| 05/25/2018 | 2494701181 | $1,000.00 | 91739 | Encloth |
| 05/29/2018 | 2494701191 | $1,000.00 | 91739 | Encloth |
| 05/29/2018 | 2494701192 | $1,000.00 | 91739 | Encloth |
| 06/05/2018 | 2494701535 | $1,000.00 | 91739 | Jennifer Shaw |
| 06/05/2018 | 2494701536 | $1,000.00 | 91739 | Jennifer Shaw |
| 06/05/2018 | 2494701829 | $1,000.00 | 91739 | Jennifer Shaw |
| 06/05/2018 | 2494701830 | $600.00 | 91739 | Jennifer Shaw |
| 07/05/2018 | 2494701907 | $1,000.00 | 91739 | Jennifer Shaw |
| 07/05/2018 | 2494701908 | $600.00 | 91739 | Jennifer Shaw |
| 07/06/2018 | 2499506964 | $1,000.00 | 91729 | Encloth |
| 07/06/2018 | 2494702315 | $1,000.00 | 91739 | Jennifer Shaw |
| 07/06/2018 | 2494702316 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/04/2019 | 2577257803 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/04/2019 | 2577257804 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/11/2019 | 2577257764 | $1,000.00 | 91739 | Jennifer Shaw |
| 02/11/2019 | 2577257765 | $600.00 | 91739 | Jennifer Shaw |
| 04/03/2019 | 2577258557 | $600.00 | 91739 | Jennifer Shaw |
| 04/03/2019 | 2577258556 | $1,000.00 | 91739 | Jennifer Shaw |
| 04/04/2019 | 2577257977 | $1,000.00 | 91739 | Jennifer Shaw |
| 04/04/2019 | 2577257978 | $1,000.00 | 91739 | Jennifer Shaw |

| *Post Office Locations | |
| --- | --- |
| Post Office Number | Address |
| 91729 | 10950 Arrow Rte, Rancho Cucamonga, CA 91729 |
| 91739 | 7615 Etiwanda Ave., Rancho Cucamonga, CA 91739 |
| 91762 | 123 W. Holt Blvd., Ontario, CA 91762 |
| 91785 | 333 E. Arrow Hwy., Upland, CA 91785 |

67.     Analysis of the money order purchases indicates that KHALILAH

CRUMPLER and/or co-conspirators used different methods to circumvent the reporting

requirements.  The first method utilized by CRUMPLER was by using two different Post

Offices on the same day to purchase money orders aggregating to more than $3,000.

For example, on February 3, 2016, CRUMPLER and/or co-conspirators purchased four

money orders totaling $3,600 as follows:  two money orders totaling $1,600 were

purchased from Post Office Number 91729; and, two money orders totaling $2,000 were

purchased from Post Office Number 91739.  All four of the money orders were made

payable to JP Lending Group.

68.     The second method KHALILAH CRUMPLER and/or co-conspirators

utilized to circumvent the reporting requirements was to spread out the money order

purchases over a series of days.  For example, on December 5, 2017, two money orders

totaling $2,000 were purchased from Post Office Number 91739.  Then, on December 6,

2017, two more money orders were purchased from the same Post Office which totaled

$1,600.  The four money orders aggregated to $3,600 and were all made payable to

Jennifer Shaw.

69.     The third method utilized by KHALILAH CRUMPLER and/or co-

conspirators to circumvent the reporting requirements was by visiting the same Post

Office at different times and purchasing more than $3,000 worth of money orders.  For

example, on September 6, 2016, four money orders totaling $3,600 were purchased

from Post Office Number 91739.  All of the money orders were made payable to JP

Lending Group.  The first group of money orders (numbers 2341112396 and

2341112397), totaling $1,600, was purchased at 09:17 from clerk XJ2FN0.  The second

group of money orders, (numbers 2390265517 and 2390265518), totaling $2,000, was

purchased at 09:34 from clerk KW2296.  In this example, the transactions were likely

conduct by two different people as the money orders were purchased only 17 minutes apart. If the same individual came in twice within 17 minutes, the clerk would have likely recognized the individual and would have filed a Funds Transaction Report, which is used to report transactions that exceed the $3,000 reporting threshold.

## SUMMARY OF TAX RETURNS

70.     Pursuant to an *ex parte* order, KHALILAH CRUMPLER's federal tax returns and return information were received from the IRS Disclosure Office for the years 2012 through 2018. Review of this information revealed that CRUMPLER and her businesses only filed a tax return for tax year 2013. For tax year 2013, CRUMPLER filed a Form 1040 – U.S. Individual Income Tax Return using the filing status of head of household and claimed two dependents. CRUMPLER had income reported only on a Schedule C – Profit or Loss From Business – under the business name of Saucie Couture, LLC. The address listed for the business was 7504 Morning Crest Place, Rancho Cucamonga, CA 91739. On the Schedule C, CRUMPLER reported gross receipts of $121,568, expenses totaling $32,539, a deduction for business use of her home of $14,327, and a net profit of $74,702. CRUMPLER's tax return listed an amount owed to the IRS of $14,651. A summary of CRUMPLER's 2013 Form 1040 tax return is illustrated below:

|                                    | 2013 Form 1040 |
|------------------------------------|----------------|
| Wages                              | $0             |
| Sch. C Business Income or Loss     | $74,702        |
| Total Income                       | $74,702        |
|                                    |                |
| Moving Expenses                    | $2,500         |
| Deductible Part of Self-employed Tax | $5,278       |

| | |
|---|---|
| Self-employed Health Insurance Deduction | $4,068 |
| | |
| Adjusted Gross Income | $62,856 |
| | |
| Standard Deduction | $8,950 |
| Exemptions | $11,700 |
| | |
| Taxable Income | $42,206 |
| | |
| Tax | $5,696 |
| | |
| Credit for Childcare Expenses | $600 |
| Child Tax Credit | $1,000 |
| | |
| Tentative Tax | $4,096 |
| Self-employment Tax | $10,555 |
| Total Tax | $14,651 |
| Total Payments | $0 |
| Amount Owed to the IRS | $14,651 |

## CONCLUSION

71.     Based upon the above, your Affiant believes probable cause exists that

KHALILAH CRUMPLER did conspire with others to launder money by agreeing to (1)

knowingly conducting and attempting to conduct a financial transaction knowing that

the property in a financial transaction represents the proceeds of some form of unlawful

activity which in fact involves the proceeds of specified unlawful activity acting with the

intent to promote the carrying on of specified unlawful activity; (2) knowingly

conducting and attempting to conduct a financial transaction knowing that the property

in a financial transaction represents the proceeds of some form of unlawful activity

which in fact involves the proceeds of specified unlawful activity acting with the

knowledge the transaction is designed in whole or in part to conceal or disguise the

nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; and (3) knowingly conducting and attempting to conduct a financial transaction knowing that the property in a financial transaction represents the proceeds of some form of unlawful activity which in fact involves the proceeds of specified unlawful activity acting with the knowledge the transaction is designed in whole or in part to avoid a transaction reporting requirement under state or federal law; all in violation of Title 18 United States Code, Sections 1956(h).

James Cudo
Task Force Officer
NOLETF/FBI

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Crim. R. 41(d)(3) this  14th  day of June, 2019.

JONATHAN D. GREENBERG
United States Magistrate Judge